UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>vs.  )    DOCKET NO.2:20-CR-00101-JDL<br>)<br>WAYNE A. FLAHERTY  ) | |

## WAYNE FLAHERTY SENTENCING MEMO

Wayne Flaherty is scheduled for sentencing by video on May 19, 2021 at 2 p.m. Wayne is on bond and will appear from his home or church. We ask the court to impose a sentence of three years probation, restitution and the conditions recommended in the PSR.

**PSR**

The revised PSR dated 3/15/21 finds an offense level 12, history III. Reduced 3 levels for the "CARES Act" Plea Agreement recommendation is the equivalent of a 9/III with an advisory range of 8-14 months, Zone B. (PSR ¶ 62). All but one criminal history point are for misdemeanor conduct occurring more than 20 years ago. These otherwise out of date convictions each score a history point due only to the agreed to information start date of the offense. At a 9/I the range is 4 to 9 months, Zone B. Id.

**Explanation of Probation Recommendation**

Wayne Flaherty is 53 years old. He has a myriad of mental health issues; PTSD, depression, anxiety, auditory hallucinations. PSR ¶ 41, 65, Defense Exhibit 1. He has a long history of being abused. PSR ¶¶ 41, 62, Defense Exhibit 1. He was victimized by the individual (Individual A)[1] who provided him the funds he failed to report to Social Security.

---

[1] Individual A (identified in the PSR) died in 2018.

1

PSR ¶¶ 3, 4, 38, Defense Exhibits 1, 2. The unreported funds were essentially "hush money" designed to keep him from reporting the abuse. PSR ¶ 7. Wayne has been disabled by his mental health for over 20 years. PSR ¶ 45.[2] The unreported funds were used for basic living expenses and for Wayne's drug addiction. And addiction related to self medicating in response to the years of victimization. Wayne provided agents with a full signed confession on August 9, 2018, almost three years ago. He has no arrests or criminal charges since then. He successfully completed two years of MA state probation on June 26, 2020. PSR ¶ 31. He received a target letter starting this case on October 24, 2018. He has been fully cooperative and compliant with all rules and requests since then. He waived indictment, plead guilty to an information relating back to conduct beginning in February of 2000, and entered a plea agreement. He has been doing well on bond since his guilty plea. Wayne now has a support group, attends counseling and substance abuse treatment, is reunited with his family and is benefitting from the oversight of federal pre-trial. Continuing the current positive trajectory is in the best interests of Wayne as well as the community at large and is consistent with a balancing of the section 3553(a) factors.

**Wayne Flaherty**

**A.    Early Life**

Wayne's traumatic life is well documented in the PSR, his own letter to the court and the letters from family. Born in Rockland, the family was of modest means. His biological father, Roland Flaherty worked in boat repair on the waterfront. His mother, Nancy had seven children with Roland, the first when she was only 15. She had Wayne at 27. Wayne is the youngest of Nancy's seven children with Roland. Seven children in twelve years took

---

[2] He was approved for SSI benefits in January, 2000 based on a diagnosis of Anxiety and Affective Mood Disorder, diagnosis codes 3000-2960. SSI benefits began at $735 per month. SSI benefits accrue to those disabled but with no or inadequate payment into the system.   Discovery document BAN1700004H.

a toll on the family and was a lot of mouths to feed. The marital relationship collapsed after Roland's father (Wayne's maternal grandfather) sexually abused Wayne at age 4 leading to an eventual divorce of his parents. A single Mom with seven children, it was all Nancy could do to try and keep the family together. His two older brothers left home for the military as soon as they were of age. His mother's second marriage, to Burt Dearborn came when Wayne was 9. That marriage lasted only five years due to Dearborn's death in 1981. PSR ¶ 37. Interestingly, Wayne described his childhood home life to probation as "good." PSR ¶ 38. "Good," despite being first abused at 4, again abused in his early teens, gang raped, and then abused by "Individual A" all before turning 15. PSR ¶38, Defense Exhibit 1.

Wayne left school around 8th grade and has no GED. PSR ¶ 44. He has no documented employment history. PSR ¶ 45. He was found totally disabled due to mental health by age 33. PSR ¶ 45. His mother sent him to live sequentially with his older brothers, one in the Navy in Hawaii, the second in the Navy in Florida. He has little structure with either as they were gone all day or at sea. He had little schooling and as he relates, "older people got me into drugs and more sexual abuse." Defense Exhibit 1. He returned to Rockland around age 16 to live with his Mother and sisters. "I tried school but it did not last long. I was way behind kids my age since I had missed so much school so I dropped out. I got work at a store and met [Individual A]. He was nice to me and gave me things. He started having sex with me when I was about 16. [Individual A] gave me drugs and later money for sexual favors for a long time. This is born out by Defense Exhibit 2. There is no other explanation for why Individual A would gift a furnished house to Wayne. They were unrelated. Wayne was almost 40 years younger. There was no other connection.

**B.     Social Security Investigation Confirms Payments from Individual A**

Social Security Case Investigative reports establish that Individual A gave Wayne money for many years. Sometimes the money came directly from Individual A, but often

through intermediaries. Wayne was required to sign a non-disclosure agreement regarding the money.

> Sometimes [Individual A] would give money to [XX] and [YY] to then pass on to him. ... FLAHERTY said at that time [ZZ] an attorney for [Individual A] had FLAHERTY sign an agreement saying he would not talk about [Individual A] to anyone. FLAHERTY explained that [Individual A] molested him when he was a juvenile.

Discovery document BAN1700004H

Other reports by Social Security investigators confirm Individual A provided Wayne with money. "Interview conducted 3/02/2017 with [ABC] who has POA for [Individual A]. [ABC] advised Flaherty has been "employed' by [Individual A] "since the early '90s' Discovery Bates # RSSA003-001. Wayne has no skill set to work for Individual A and the claim of employment was met by skepticism by the Inspector. Id.

Investigating while Individual A was still alive, an OIG investigator traveled to Knox County and met with ABC, an employee of Individual A who explained money for Wayne was paid by Individual A through XXX. "I spoke with [Individual A] in his kitchen in the presence of XXX. [Individual A] appeared to have difficulty hearing me and he struggled to respond to my questions. It became clear very quickly that [Individual A] was not willing to address any issues regarding his finances or Wayne FLAHERTY." Discovery document BAN1700004H.

C.  **Sobriety and Rehabilitation**

On February 2, 2018, Wayne was arrested in Haverhill, MA having gone to buy drugs for his opiate addiction. PSR ¶ 31. He pled guilty in June of 2018 and received a suspended sentence with two years of probation. Since then he has gotten treatment for his opiate

addiction, joined 12 step programs and engaged in mental health counseling. He remains in those treatments. The case was a turning point. For the last three years Wayne has undergone a process of reform. He credits part of that to the support of his family and also to his renewed spirituality. Letters from his family and pastor confirm Wayne's commitment. Defense Exhibit 1. From a lifetime of addiction Wayne has found sobriety. PSR ¶¶ 42, 43.

> After many years of addiction Wayne has been clean and sober. He has tried to turn his life around. We have been able to get together and do things brothers should. He enjoys coming to our camp and helping me when he can. Wayne has two children and two grandchildren he enjoys. Wayne has been seeing a counselor for some time to deal with sexual abuse/ addiction for many years

Letter of his older brother Daniel. Defense Exhibit 1, p. 4.

> I have seen Wayne grow so much. Wayne used to live with me throughout the years of his life. He has been through so much from abuse to drug abuse. It seems so good to see him clean and sober from the drugs. I finally have my brother back. I know he has been trying really hard. He has 2 children that he is happy to have back in his life with 2 beautiful grandchildren that he is so happy to be here to watch them grow. During the course of his life I have seen Wayne turn to drugs to go get through the abuse (sex) that he endured by someone he thought was a friend. I almost lost my brother. It is so good to finally have my brother back.

Letter of his older sister Debra. Defense Exhibit 1, p. 6.

> Wayne is a man who expresses remorse and accepts responsibility...Wayne has always been honest with me, and has never

5

> "sugar-coated" the struggles he walked through in the past or those he currently faces...It is apparent that Wayne cares for his family, his community, his God. He has become a trusted and familiar face in the church and he confides not only in me, but also other members of the church, never side-stepping his role in anything he has done but seeking to know how to grow forward.
>
> It is the strong desire, not only of this Pastor, but others in the church and surrounding community for Wayne to remain in the public area, his community- where he functions well, and cares for his family. I believe he should remain as a constant presence in his town as he works to financially resolve the matter. He will continue attending the church, meeting with me and others in his circle of care (other counselors and clinicians). Wayne will be involved in any way appropriate. He presently helps clean the church with his mother as an act of service. I will continue to be available to him as a counselor, spiritual mentor and friend.

Letter of Wayne's Pastor, Defense Exhibit 1 pp. 8-9.

**Additional Support for a Sentence of Probation**

The PSR points out the court may consider the Guideline scoring of criminal history as over-representing Wayne's criminal history. "In the last 20 years, Flaherty has had one criminal case that received one criminal history point; however, since the offense, which was ongoing in nature, began in February 2000, the lookback for criminal history purposes was 10 years prior to February 2000 (for one-point offenses)." PSR ¶60.

"The defendant has a long history of reported abuse that impacted his mental health. He ultimately began abusing drugs, which he did for a protracted period of time, including during the instant offense. He appeared to have genuine remorse when discussing the

offense. He has since attained and maintained sobriety. He has family support." PSR ¶ 62.

The Second Circuit has suggested that using the current fraud tables may lead to longer than necessary sentences.

> [T]he Commission could have approached monetary offenses quite differently. For example, it could have started the Guidelines calculation for fraud offenses by selecting a base level that realistically reflected the seriousness of a typical fraud offense and then permitted adjustments up or down to reflect especially large or small amounts of loss. Instead the Commission valued fraud (and theft and embezzlement) at level six, which translates in criminal history category I to a sentence as low as probation, and then let the amount of loss, finely calibrated into sixteen categories, become the principal determinant of the adjusted offense level and hence the corresponding sentencing range. This approach, unknown to other sentencing systems, was one the Commission was entitled to take, but its unusualness is a circumstance that a sentencing court is entitled to consider. See *Kimbrough v. United States*, 552 U.S. 85, 101, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (sentencing judge may make a non-Guidelines sentence if the judge disagrees with a Commission's policy determination). Where the Commission has assigned a rather low base offense level to a crime and then increased it significantly by a loss enhancement, that combination of circumstances entitles a sentencing judge to consider a non-Guidelines sentence.

*U.S. v. Algahaim*, 842 F.3d 796 (2nd Cir. 2016).

The individual SSI payments Wayne received each month were modest ranging from mid $512 to $750 as SSI was adjusted over time for inflation. The most largest annual SSI amount was $8,820 in 2017. An amount no one can live on.  The advisory range of 14 reflects the combined loss of many years. As *Algahaim* points out, a base offense level of 6 may be sufficient to reflect the fraud. Increasing the offense level by the dollar amount

involved may not be the best reflection of culpability. Wayne accepts full responsibility for lying to Social Security. He was drug addicted, scared and suffering from his mental disability. He knew he was not being honest in failing to report the payments from Individual A. But making that report would be revealing his sexual abuse. Candor would have required he share his victimization not with a victim advocate or counsel, but with a government agency. His diagnosis of anxiety was enough to disable him. Imagine how a person disabled by anxiety could tell a stranger in a Social Security Office they have been a long time victim of sex abuse by a famous person who was paying them to remain quiet about the abuse. While wrong, Wayne's culpability is factually different from most other frauds.

Wayne's remorse is evident in his statement to probation during the PSR interview. "Flaherty was quite emotional when describing his regret and remorse. He explained that Individual A, who was famous and wealthy, had a room in his house where he repeatedly raped Flaherty starting when Flaherty was approximately 13 years old. In the 1980s, a prosecution was attempted, but Individual A "got a slap on the wrist." Afterwards, Individual A told Flaherty that he (Individual A) would always take care of Flaherty." PSR ¶ 7. Individual A died famous and wealthy and his abuse of Wayne was never made public.

**Conclusion**

Wayne Flaherty is 53 years old. He is a sexual abuse victim suffering from PTSD, depression, anxiety, and auditory hallucinations. He has regained and is maintaining sobriety after 35 years of drug addiction. He is in counseling for his mental health, treatment to maintain his sobriety and has put his life back on track. His mother and family members are living with him. He was victimized by a person of fame and influence who then made him significant payments of a long period of time. This can only be seen as "hush money." Wayne admits to failing to report the payments to Social Security. These were payments he told no one about as they were linked to the years of sexual abuse he suffered, abuse which has

colored his life, undermined his self respect and self esteem and left him with PTSD, guilt ans fear.

His history of being sexually assaulted explains his terror of going to jail or prison where he feels he will again be victimized. He has learned from this case and shown by successful completion of MA state probation and his current bail performance that he has changed and is worthy of a probated sentence. Probation will allow him to work on a restitution plan as well and continuing his treatment. Any period of incarceration will disrupt the balance he has found, exacerbate his PTSD and likely serve as a downward trigger. Deterrence is greater by maintaining the specter of incarceration as an incentive to maintain his sobriety, treatment and supervision compliance.

A sentence of three years of probation, restitution and the special conditions recommended by probation meets the §3553(a) factors under the unique facts of this case and the history and characteristics of Wayne Flaherty.


DATE: May 12, 2021                           /s/ *David Beneman*
                                             David Beneman
                                             Attorney for Wayne Flaherty


David Beneman
Federal Defender
P.O. Box 595
Portland, Me 0412-0595
207-553-7070 ext. 101
David_Beneman@fd.org

## CERTIFICATE OF SERVICE

    I, David Beneman, attorney for Wayne Flaherty, hereby certify that I have served, electronically, a copy of the within "**WAYNE FLAHERTY SENTENCING MEMO**" upon Jeanne Semivan, Assistant United States Attorney, United States Attorney's Office, Portland, ME via the ECF system.

                                                          */s/ David Beneman*
                                                          David Beneman

DATE: May 12, 2021